FILED 17 APR '25 15:31 USDC-ORE

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:25-cr-<u>00169-MC</u> |
| v. | **INDICTMENT** |
| **JOEL MATTHEW CASWELL,** | 18 U.S.C. § 1343 |
| **Defendant.** | 18 U.S.C. § 1028A |
| | 26 U.S.C. § 7201 |
| | 26 U.S.C. § 7202 |
| | **Forfeiture Allegation** |
| | <u>**UNDER SEAL**</u> |

## GRAND JURY CHARGES:

## INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

    1.    Defendant **JOEL MATTHEW CASWELL** resided in the State of Oregon.

    2.    Between 2018 and 2022, defendant had ownership and/or managing interests in

Caswell Thompson LLC, Siskiyou Cascade Resources, LLC (SCR), Siskiyou Cascade

Construction, LLC (SCC), and Siskiyou Cascade Industries, LLC (SCI).

    3.    Adult Victim 1 (AV1) resided in the State of Oregon.

**Indictment**                                                                                                    **Page 1**

## CARES ACT

### The Paycheck Protection Program

4.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of up to $349 billion in United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or about April 2020, Congress authorized over $300 billion in United States taxpayer funds in additional PPP funding.

5.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  One certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments."  The applicant was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."

6.      In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the

PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

7.      A business's PPP loan application was received and processed, in the first instance, by a participating financial institution, then transmitted, for further review, to the Small Business Administration ("SBA") to assess the applicant's eligibility. If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies. The SBA guaranteed the loans funded under the PPP and paid lender fees to financial institutions for financing the loans.

8.      PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses. Forgiveness of the PPP Loan entailed the SBA paying the full loan amount and accrued interest to fully satisfy the lending institution.

### The Economic Injury Disaster Loan Program

9.      The Economic Injury Disaster Loan Program ("EIDL") was a United States SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10.     The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

**Indictment**                                                                 **Page 3**

11.     To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was required to self-certify certain information and was also required to certify all information in the application was true and correct to the best of the applicant's knowledge. EIDL loan applications were submitted directly to the SBA over the Internet, using cloud-based platforms hosted on computer servers in several states. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL were issued directly by the SBA. EIDL Advances of up to $10,000 were also available to small businesses within three days of applying for an EIDL. The amount of any EIDL Advance was determined based upon the number of certified employees by the applicant. EIDLs must be repaid, but EIDL Advances do not have to be repaid.

12.     EIDL loan proceeds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

## COUNTS 1-3
### (Wire Fraud)
### (18 U.S.C. § 1343)

13.     Paragraphs 1-12 are realleged and incorporated herein.

14.     Beginning on or about April 2020 and continuing through on or about February 2022, defendant knowingly executed and attempted to execute a scheme and artifice to defraud

the SBA to obtain money, funds, and other property by means of materially false and fraudulent

pretenses, representations, and promises.

## SCHEME TO DEFRAUD

15.    As part of the scheme and artifice to defraud, defendant committed the following

acts:

16.    In or around April 2020, Defendant began applying for PPP and EIDL loans for

his various businesses, including SCI, SCC, and SCR.

17.    Defendant submitted falsified supporting documents in PPP loan applications for SCI,

SCC, and SCR.

18.    Defendant submitted falsified payroll records showing SCI, SCC, and SCR had active

employees when they did not.

19.    On each PPP loan application, defendant did not disclose his common ownership in the

other business entities. In addition, defendant falsely certified in each PPP loan application that between

February 15, 2020, and December 30, 2020, he had not and would not receive another loan under the PPP

program.

20.    Defendant also misrepresented the number of employees he allegedly had working for

each business and falsely claimed revenue for SCC at over $1.5 Million and SCR at over $1.2 Million.

21.    Defendant submitted fictitious supporting documentation to make it appear as if he has

been paying employees during the qualification period.  These fictitious documents included IRS Forms

941 and 944 which had not been submitted to the IRS, purported payroll spreadsheets from QuickBooks,

and a false personal tax return, which included personal identifying information of Adult Victim 1 and

AV1's forged signature.

22.    Defendant electronically attested via DocuSign that the information and documentation

contained in the SCI, SCC, and SCR PPP applications were "true and accurate in all material respects[.]"

Defendant also acknowledged that he understood his certifications were subject to criminal penalty.

23.    The statements made by defendant as part of the scheme were material, in that they had

the natural tendency to influence, or were capable of influencing, the SBA and financial institutions to

approve the PPP loans.

24.    On or about the dates set forth below in each count, in the District of Oregon and

elsewhere, defendant **JOEL MATTHEW CASWELL,** for the purpose of executing the above-

described material scheme to defraud and obtaining money and property by means of materially

false and fraudulent pretenses, representations, and promises, knowingly caused to be transmitted

the following interstate wires:

| Count | Approximate Date | Interstate Transmission |
|---|---|---|
| 1 | April 13, 2020 | SCI PPP Loan Application submitted through servers in Oregon and then routed through servers in Virginia. |
| 2 | April 27, 2020 | SCR PPP Loan Application submitted through servers in Oregon and then routed through servers in Virginia. |
| 3 | May 16, 2020 | SCC PPP Loan Application submitted through servers in Oregon and then routed through servers in Virginia. |

In violation of Title 18, United States Code, Section 1343.

### COUNT 4
### (Aggravated Identity Theft)
### (18 U.S.C. § 1028A)

25.    Paragraphs 1-24 are incorporated herein.

26.    On or about April 27, 2020, in the District of Oregon, defendant **JOEL**

**MATTHEW CASWELL**, did knowingly possess, transfer, and use without lawful authority,

the means of identification of another person, to wit, the name, social security number, and

**Indictment**                                                                                              **Page 6**

signature of AV1, during and in relation to a felony violation enumerated in

18 U.S.C. § 1028A(c), to wit, Wire Fraud as charged in Count 2 of this Indictment, knowing that

the means of identification belonged to another actual person,

In violation of Title 18, United States Code, Section 1028A.

### COUNT 5
### (Wire Fraud)
### (18 U.S.C. § 1343)

27.    Paragraphs 1-24 are realleged and incorporated herein.

28.    On March 30, 2020, defendant **JOEL MATTHEW CASWELL** applied for an

EIDL in the name of SCI.

29.    He used the names of Adult Witness 1 and Adult Witness 2 (AW1 and AW2) as

the owner of the business and omitted his own identifying information.

30.    The loan was initially rejected due to AW1's low credit score.

31.    In April 2022, defendant and AW1 worked to complete the EIDL application after

being notified it was ready for approval.

32.    By that time, AW2 had left the company. Defendant accessed AW2's company

email address in order to digitally sign his name and complete the application without his

consent or knowledge.

33.    SBA approved the loan agreement and paid SCI $224,000.  At the time the SBA

deposited the funds, SCI's bank account had a balance of less than $150.

34.    On April 13, 2022, Defendant transferred $70,000 to Pearl Sport Group, which

managed defendant's ultimate frisbee team. The funds were then used as a deposit to rent

Providence Park in Portland, Oregon for an 8-day Ultimate Frisbee Tournament.

35.     On or about April 11, 2022, in the District of Oregon and elsewhere, defendant

**JOEL MATTHEW CASWELL,** for the purpose of executing the above-described material

scheme to defraud and obtaining money and property by means of materially false and fraudulent

pretenses, representations, and promises, knowingly caused to be transmitted SCI's EIDL

Application from Oregon through servers outside the state of Oregon,

In violation of Title 18, United States Code, Section 1343.

**COUNT 6**
**(Tax Evasion)**
**(18 U.S.C. § 7201)**

36.     From in or about May 2019 through in or about May 2021, in the District of

Oregon, defendant **JOEL MATTHEW CASWELL**, willfully attempted to evade and defeat

employment taxes, interest, and penalties due and owing by SCR to the United States of

America, for Quarter 4 of 2018, Quarter 1 of 2019, and Quarter 2 of 2019, by committing the

following affirmative acts, among others:

a)     Directing customers to write business checks to him personally instead of SCR;

b)     Directing SCR customers to write checks to his other company, SCI, instead of to

SCR;

c)     Depositing SCR funds into an SCI bank account; and

d)     Making false and misleading statements to IRS Collection Officers and on IRS

forms;

In violation of Title 18, United States Code, Section 7201.

/ / /

/ / /

**Indictment**                                                                                              **Page 8**

## COUNT 7
### (Tax Evasion)
### (18 U.S.C. § 7201)

37.     From in or about August 2019 through in or about May 2021, in the District of

Oregon, defendant **JOEL MATTHEW CASWELL**, willfully attempted to evade and defeat

employment taxes, interest, and penalties due and owing by SCC to the United States of

America, for Quarter 3 of 2018, Quarter 4 of 2018, Quarter 1 of 2019, and Quarter 2 of 2019 by

committing the following affirmative acts, among others:

a)      Directing a third-party to move business funds to evade an IRS SCC bank levy;

b)      Directing SCC customers to write checks to his other company, SCI, instead of to

SCC;

c)      Depositing SCC funds into an SCI bank account; and

d)      Making false and misleading statements to IRS Collection Officers and on IRS

forms;

In violation of Title 18, United States Code, Section 7201.

## COUNT 8
### (Tax Evasion)
### (18 U.S.C. § 7201)

38.     From in or about August 2020 through in or about May 2021, in the District of

Oregon, defendant **JOEL MATTHEW CASWELL**, willfully attempted to evade and defeat

employment taxes, interest, and penalties personally due and owing to the IRS Trust Fund

Recovery Penalty through an IRS Trust Fund Recovery Penalty assessment derived from unpaid

SCR and SCC employment taxes for Quarter 3 of 2018 through Quarter 2 of 2019, by

committing the following affirmative acts, among others:

a)      Transferring business and personal assets to a trust that he created; and

b)      Making multiple false and misleading statements to the IRS,

In violation of Title 18, United States Code, Section 7201.

**COUNTS 9-23**
**(Failure to Collect or Truthfully Account for and Pay Over Tax)**
**(18 U.S.C. § 7202)**

39.      Paragraphs 1 and 2 are realleged and incorporated herein.

***Employment Tax Withholding***

40.      Pursuant to the Internal Revenue Code and associated statutes and regulations, employers are required to withhold amounts from their employees' gross pay including Federal Insurance Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and federal income taxes. These taxes will be referred to in this Indictment collectively as "trust fund taxes" because employers hold the withheld amounts in trust until paid over to the United States.  Employers are required to remit these withheld, trust fund amounts to the IRS on a quarterly basis, no later than the last day of month following the end of the quarter.

41.      In addition to the trust fund taxes that must be withheld from pay, employers are separately required to make contributions under FICA for Social Security and Medicare in amounts matching the amounts withheld from their employees' pay for those purposes. Such employer contributions are likewise required to be remitted to the IRS no later than the last day of the month following the end of the quarter. Collectively, these five components required to be remitted quarterly are commonly referred to as "employment taxes," made up of the trust fund taxes withheld (individual income, Social Security and Medicare taxes) and the matching amounts contributed by the employer.

**Indictment**                                                                                 **Page 10**

42.    Employers are required to file, one month after the conclusion of the calendar quarter, an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"), setting forth the total amount of income taxes withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits.

43.    A person is responsible for collecting, accounting for, and paying over the employment taxes if he or she has the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual exercised such control in fact.

44.    Defendant exercised control over SCR and SCC financial affairs by, among other acts, approving payments, signing checks, controlling bank accounts, and possessing signature authority on bank accounts, thus, he was a responsible person for collecting trust fund taxes, accounting for the employment taxes by filing Forms 941 with the IRS, and paying over to the IRS the employment taxes for SCR and SCC employees.

45.    On or about the dates listed in the table below, for each of the calendar quarters listed below, in the District of Oregon and elsewhere, defendant **JOEL MATTHEW CASWELL** did willfully fail to collect, truthfully account for, and pay over the trust fund taxes due and owing to the IRS on behalf of the employees of SCR.

| Count | Payroll Tax Quarter |
|-------|---------------------|
| 9 | Third Quarter 2019 |
| 10 | Fourth Quarter 2019 |
| 11 | Second Quarter 2020 |
| 12 | Third Quarter 2020 |
| 13 | Second Quarter 2021 |

**Indictment**                                                                 **Page 11**

| 14 | Third Quarter 2021 |

46.    On or about the dates listed in the table below, for each of the calendar quarters listed below, in the District of Oregon and elsewhere, defendant **JOEL MATTHEW CASWELL** did willfully fail to collect, truthfully account for, and pay over the trust fund taxes due and owing to the IRS on behalf of the employees of SCC.

| Count | Payroll Tax Quarter |
|-------|---------------------|
| 15 | Third Quarter 2019 |
| 16 | Fourth Quarter 2019 |
| 17 | Second Quarter 2020 |
| 18 | Third Quarter 2020 |
| 19 | Fourth Quarter 2020 |
| 20 | First Quarter 2021 |
| 21 | Second Quarter of 2021 |
| 22 | Third Quarter of 2021 |
| 23 | Fourth Quarter 2021 |

In violation of Title 18, United States Code, Section 7202.

## FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Counts 1-5 of this Indictment, defendant **JOEL MATTHEW CASWELL** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, constituting, or derived from, proceeds defendant obtained directly or indirectly as a result of the said violations,

including but not limited to a sum of money equal to the amount of proceeds obtained as a result
of the offense in the form of a money judgment.

Dated: April 17, 2025                                    A TRUE BILL

Presented by:

WILLIAM M. NARUS
Acting United States Attorney

GAVIN W. BRUCE, OSB #113384
Assistant United States Attorney